[No. A081405. First Dist., Div. Three. Aug. 18, 1999.]

LARRY NEVERKOVEC, Plaintiff and Appellant, v.
JOSEPH GREGORY FREDERICKS, Defendant and Respondent.

**COUNSEL**

Law Offices of Harry D. Roth, Harry D. Roth and Karen L. Blank for Plaintiff and Appellant.

McNamara, Houston, Dodge, McClure & Ney, Guy D. Borges, Lisa M. U'Ren and Cynthia E. Miller for Defendant and Respondent.

## OPINION

**PARRILLI, J.**—In this case we examine a problem that has recurred not only in California but across the nation. An injured party settles with an alleged tortfeasor's insurer, signing a general release agreement that appears to excuse everyone in the world from liability. Then the injured party proceeds against a different alleged tortfeasor, who raises the general release as a defense. We conclude that principles of contract law governing the rights of third party beneficiaries, and related rules of evidence, provide the best approach for resolving such cases.

Larry Neverkovec sued Joseph Gregory Fredericks for personal injuries suffered in an automobile accident. The trial court granted Fredericks's motion for summary judgment, on the ground that Neverkovec had signed an unambiguous release of all claims he had against any party with potential liability. Neverkovec appeals from the ensuing judgment. We reverse. Fredericks was not a party to the release agreement, and in order to enforce it as a third party beneficiary he had to show the parties intended their agreement to benefit him. He did not meet this burden.

### BACKGROUND

In September 1994, Larry Neverkovec and Scott Moore were riding in a car driven by Larry's brother, Jason Neverkovec. Fredericks was driving toward them, with his son Justin as a passenger. As Jason made a left turn, Fredericks's vehicle struck the right side of the car, seriously injuring Larry and Moore. According to the Highway Patrol collision report, Jason admitted he did not look for oncoming traffic when making the left turn, because he was talking to Larry. The officer who wrote the report testified at his deposition that he found no basis for holding Fredericks at fault.

Jason was driving a car owned by Robert Alexander, who employed the Neverkovecs' mother, Cindy Howard. Alexander allowed Howard to use the vehicle as she wished. The vehicle was insured by Philadelphia Insurance Company, which agreed to pay the policy limit of $30,000 but required all claimants to join in one settlement. In February 1996, the attorneys for Howard (acting as Larry's guardian), Fredericks, and Moore met to discuss the settlement. The attorneys for Howard and Moore did not discuss with Fredericks's attorney whether they were contemplating filing claims against

Fredericks, nor was a release of any such claims discussed. In March 1996, the three attorneys signed an agreement apportioning the policy proceeds as follows: $15,000 to Howard as Larry's guardian; $10,000 to Moore; $4,500 to Fredericks; and $500 to Justin. The agreement stated: "Upon payment of these sums by Philadelphia Insurance Company, the parties release their claims against Jason Neverkovec."

The agreement was forwarded to Philadelphia Insurance Company, which sent back general release forms to the attorneys to be signed by their clients. On April 18, 1996, Moore's counsel filed a complaint against Fredericks. Howard signed a general release on Larry's behalf on April 19, 1996. Fredericks signed a similar release on April 24th, 1996. In May 1996, the court appointed Howard guardian ad litem for Larry, and approved the settlement of his claim against Jason. Moore was on a military training mission when a general release on the same form as Fredericks' release was sent to his counsel. Moore signed the release in June 1996.

The "Parents' Release and Indemnity Agreement" signed by Howard on Larry's behalf was particularly broad. Howard agreed to "forever release, discharge and covenant to hold harmless Alexander & Associates d/b/a Rent a Wreck, Jason Neverkovec, Cindy Howard and Philadelphia Indemnity Insurance Companies and any other person, firm or corporation charged or chargeable with responsibility or liability, their heirs, administrators, executors, successors and assigns, from any and all claims, demands, damages, costs, expenses, loss of services, actions and causes of action, belonging to the said minor or to the undersigned arising out of any act or occurrence up to the present time, and particularly on account" of Larry's injuries resulting from the accident.[1] The releases signed by Moore and Fredericks included

---

[1] The full text of the agreement signed by Howard is as follows: "In consideration of the payment, to the undersigned, of the sum of Fifteen Thousand Dollars and------XX/100 (Dollars) ($15,000.00) the receipt of which is hereby acknowledged, the undersigned Cindy Howard as parent and guardian of Larry Neverkovec, a minor, do forever release, discharge and covenant to hold harmless Alexander & Associates d/b/a Rent A Wreck, Jason Neverkovec, Cindy Howard and Philadelphia Indemnity Insurance Companies and any other person, firm or corporation charged or chargeable with responsibility or liability, their heirs, administrators, executors, successors and assigns, from any and all claims, demands, damages, costs, expenses, loss of services, actions and causes of action, belonging to the said minor or to the undersigned arising out of any act or occurrence up to the present time, and particularly on account of all personal injury, disability, property damage, loss or damages of any kind sustained or that may hereafter be sustained by the said minor or by the undersigned, in consequence of an accident that occurred on or about the 15th day of September, 1994, at or near Dixon, CA.

"The undersigned do hereby bind Cindy Howard and heirs, administrators, executors, successors and assigns to repay to the said Philadelphia Indemnity Insurance Companies and to any other person, firm or corporation charged with responsibility or liability, their heirs,

the same named parties "and his, her, their, or its agents, servants, successors, heirs, executors, administrators and all other persons, firms, corporations, associations or partnerships."

On September 16, 1996, Howard filed a complaint on Larry's behalf against Fredericks. By stipulation, the action was consolidated with Moore's case against Fredericks. In April 1997, Howard (acting for Jason) and Alexander & Associates moved for a determination of good faith settlement under Code of Civil Procedure, section 877.6.[2] The court granted the motion over Fredericks's objection, ruling that Fredericks could not contest the settlement because he was one of the settling parties. Fredericks moved for summary judgment in June 1997, contending the releases signed by Moore and Howard operated to relieve him of any liability. Howard responded that extrinsic evidence showed the parties never intended to release Fredericks. The trial court granted summary judgment to Fredericks in both cases, ruling that "the releases signed by or on behalf of the Plaintiffs were unambiguous, and each operated to release all claims arising against any party with potential liability."

---

administrators, executors, successors and assigns, any additional sum (*sic*) or money that any of them may hereafter be compelled to pay on account of the injuries to said minor because of the said accident.

"To procure the payment of the said sum, <u>Cindy Howard</u> hereby declare (*sic*): that no representations about the nature and extent of the said injuries, disabilities or damages made by any physician, attorney or agent of any party released, nor any representations regarding the nature and extent of legal liability or financial responsibility of any of the parties released have induced <u>Cindy Howard</u> to make this release and indemnity agreement; that in determining the amount of the said sum there has been taken into consideration not only the ascertained injuries, disabilities and damages, but also the possibility that the injuries sustained may be permanent and progressive and recovery therefrom uncertain and indefinite, so that consequences not now anticipated may result from the said accident.

"It is further understood and agreed that all rights under Section 1542 of the Civil Code of California and any similar law of any state or territory of the United States are hereby expressly waived. Said section reads as follows: '1542. Certain claims not affected by general release. A general release does not extend to claims which the creditor does not know or suspect to exist in his favor at the time of executing the release, which if know (*sic*) by him must have materially affected his settlement with the debtor. Further, all rights under insurance (*sic*) Code 790.03(n) are expressly waived.'

"The undersigned agree, as a further consideration and inducement for this release and indemnity agreement, that it shall apply to all unknown and unanticipated injuries and damages directly and indirectly resulting from said accident, as well as to those now disclosed.

"The undersigned understand that the parties hereby released admit no liability of any sort by reason or (*sic*) said accident and that said payment in compromise is made to terminate further controversy respecting all claims for damages that said minor or the undersigned have heretofore asserted or might personally or through personal representatives hereafter assert because of said accident."

[2]Further statutory references are to the Code of Civil Procedure, unless otherwise specified.

Only Larry Neverkovec has appealed.[3]

DISCUSSION

A defendant moving for summary judgment may meet the burden of showing the action is meritless by establishing a complete defense. If the defendant makes a sufficient showing, the burden shifts to the plaintiff to present specific facts showing a triable issue of material fact. (§ 437c, subd. (o)(2).) Here, the trial court found that Fredericks established a complete defense based on the release of Larry's claims executed by Howard.

We review the trial court's ruling de novo, assuming the role of the trial court and redetermining the merits of the motion. We construe the moving party's papers strictly and the opposing party's papers liberally, resolving any doubt as to whether there is a triable issue in favor of the opposing party. (*Artiglio* v. *Corning Inc.* (1998) 18 Cal.4th 604, 612 [76 Cal.Rptr.2d 479, 957 P.2d 1313]; *Montgomery* v. *Cal Accountants Mutual Ins. Co.* (1998) 61 Cal.App.4th 854, 858-859 [72 Cal.Rptr.2d 39]; *Pensinger* v. *Bowsmith, Inc.* (1998) 60 Cal.App.4th 709, 717-718 [70 Cal.Rptr.2d 531].)

We conclude that even if the general release was sufficient to shift the burden of proof to Howard, the extrinsic evidence before the court raised a triable issue regarding the parties' intent to release Fredericks.

Fredericks's summary judgment motion relied on two cases involving broad general releases signed in the aftermath of automobile accidents. In *General Motors Corp.* v. *Superior Court* (1993) 12 Cal.App.4th 435 [15 Cal.Rptr.2d 622] (*General Motors*), the plaintiff's counsel advised the manufacturer of the plaintiff's vehicle that there was a possible products liability claim. The plaintiff then settled with the other driver involved in the accident, signing a release exonerating her "and any and all other persons, firms and corporations, whether herein named or referred to or not," from any claims arising from the accident. The plaintiff subsequently obtained new counsel and filed suit against the manufacturer, which unsuccessfully moved for summary judgment based on the release. (*Id.* at pp. 437-439.)

The Court of Appeal in *General Motors* granted the manufacturer's petition for a writ of mandate directing entry of summary judgment. The court held that while a release of one tortfeasor does not discharge other tortfeasors from liability "unless its terms so provide" (§ 877, subd. (a)), a

---

[3]Neverkovec's counsel has included Moore as a party appellant in the caption on his briefs, and refers to Moore at various points as if he were a party to this appeal. This is an improper practice. Counsel asserts in the appellant's reply brief that the separate judgments entered against Neverkovec and Moore are not severable. That claim is frivolous. Moore did not file a notice of appeal; the judgment against him is not a part of this record; and our disposition of Neverkovec's appeal will have no effect on Moore.

release agreement need not specifically identify the tortfeasors who are released.[4] Under the usual rules of contract interpretation, the release agreement before the court unambiguously discharged the manufacturer and the rest of the world from liability arising from the automobile accident. The plaintiff presented no competent extrinsic evidence to suggest the parties intended another possible meaning of the language they employed, and the plaintiff had been aware of his potential claim against the manufacturer. Furthermore, the other driver had an incentive to include all other potential tortfeasors in the release to avoid entanglement in litigation, noted the court, citing *Singer Co.* v. *Superior Court* (1986) 179 Cal.App.3d 875, 883-884 [225 Cal.Rptr. 159] (although tortfeasor settling in good faith is discharged from liability for contribution to other tortfeasors under § 877, subd. (b), settling tortfeasor must respond if made a cross-defendant by joint tortfeasor). (*General Motors, supra,* 12 Cal.App.4th at pp. 439-443.)

The *General Motors* court rejected claims that a broad interpretation of the release was unconscionable or contrary to public policy. The court also dismissed the argument that the manufacturer lacked standing to enforce the release agreement as a third party beneficiary. It was only necessary for the manufacturer to show that it was one of a class of persons for whose benefit the agreement was made, and this test was met under the court's interpretation of the release. (*General Motors, supra,* 12 Cal.App.4th at pp. 443-444.)

Fredericks also relied on *Lama* v. *Comcast Cablevision* (1993) 14 Cal.App.4th 59 [17 Cal.Rptr.2d 224] (*Lama*), in which the plaintiff settled with the other driver and signed a release of all claims against "any other person, corporation, association or partnership charged with responsibility for injuries to the person and property of the Undersigned" as a result of the accident. The plaintiff's counsel did no discovery and conducted no investigation into the employment status of the other driver, who had been driving her husband's car. Counsel merely asked the other driver's insurance claims

---

[4]Section 877 provides in relevant part: "Where a release . . . is given in good faith before verdict or judgment to one or more of a number of tortfeasors claimed to be liable for the same tort . . . it shall have the following effect:

"(a) It shall not discharge any other such party from liability unless its terms so provide, but it shall reduce the claims against the others in the amount stipulated by the release . . . .

"(b) It shall discharge the party to whom it is given from all liability for any contribution to any other parties."

Section 877 was enacted as part of a bill intended to abolish two common law rules—one forbidding contribution among tortfeasors, and another mandating that a release of one joint tortfeasor for consideration released all others. The courts have striven to apply the statute to accommodate the goals of equitable sharing among tortfeasors and encouragement of settlements, which "are not always necessarily harmonious." (*Tech-Bilt, Inc.* v. *Woodward-Clyde & Associates* (1985) 38 Cal.3d 488, 493-494 [213 Cal.Rptr. 256, 698 P.2d 159]; *Mattco Forge, Inc.* v. *Arthur Young & Co.* (1995) 38 Cal.App.4th 1337, 1349 [45 Cal.Rptr.2d 581].)

representative whether any other insurance applied, receiving a negative answer. After settling, the plaintiff dismissed his complaint with prejudice. Four months later he retained new counsel and filed a complaint against the other driver's employer, alleging the other driver had been in the course and scope of her employment at the time of the accident. In a bifurcated trial on the liability issue, the trial court ruled that the release agreement expressly released the employer, and that the release and dismissal constituted a retraxit. (*Lama, supra*, 14 Cal.App.4th at pp. 61-63.)

The Court of Appeal in *Lama* affirmed, holding it was "of no moment" that the employer was not a party to the release. The release of third parties benefited the other driver by shielding her from future exposure to damages arising from the accident. The other driver's claims representative testified that the release was designed to protect the insured from any causes of action, and that the insurer would not have settled without a full release. There was no mutual mistake of fact regarding the meaning of the release; the plaintiff's first counsel admitted he paid no particular attention to its terms. The court agreed with the employer's claim that as a "corporation . . . charged with responsibility for injuries" resulting from the accident, it came within the terms of the release and was thus discharged from liability under section 877, subdivision (a). Although section 877 permits an action against a joint tortfeasor even after a dismissal with prejudice, "that is only in the case in which there has not been a specific discharge of another tortfeasor by the release." (*Lama, supra*, 14 Cal.App.4th at pp. 63-64.)

 Fredericks argued that, just as in *General Motors* and *Lama*, he was covered by the general language of the release and was therefore entitled to judgment in his favor. Neverkovec's opposition to the summary judgment motion distinguished *General Motors* on the ground that the extrinsic evidence here showed the parties did not intend to release Fredericks.[5] Neverkovec relied instead on another case involving similar circumstances, *Appleton v. Waessil* (1994) 27 Cal.App.4th 551 [32 Cal.Rptr.2d 676] (*Appleton*). The *Appleton* plaintiff filed a personal injury action against the other driver in the accident, the owner of the other car, and a broker who arranged for the car to be loaned to an organization affiliated with the other driver. The plaintiff settled with the owner and agreed to dismiss the broker, based on the representations of opposing counsel regarding the arrangement by which the car had been loaned. The plaintiff signed a general release in favor of the owner, the broker, and "all other persons, firms, associations and corporations." The court determined the settlement was in good faith, and the

---

[5]By responding on the merits to Fredericks's affirmative defense based on the release, Neverkovec waived the objection that Fredericks failed to plead the defense in his answer. (*Jones v. Dutra Construction Co.* (1997) 57 Cal.App.4th 871, 876-877 [67 Cal.Rptr.2d 411].)

plaintiff dismissed the owner and the broker from the action. He then served the other driver, who successfully moved for summary judgment based on the broad terms of the release agreement. (*Id.* at pp. 553-554.)

The Court of Appeal reversed, holding that the release agreement was not specific enough to include the other driver under section 877, subdivision (a). The *Appleton* court distinguished *Lama* on the grounds that the *Appleton* plaintiff did conduct discovery into the other driver's relationships with the vehicle's owner and the broker, realized he was releasing any agents or employees of those entities, advised opposing counsel he would be proceeding against the other driver, and dismissed his action only as to the owner and broker. The court also distinguished *General Motors*, characterizing the result in that case as "unfortunate." The court emphasized that the *Appleton* plaintiff presented the following extrinsic evidence showing the release did not apply to the other driver: the complaint, naming the other driver and alleging his primary responsibility for the accident; correspondence with opposing counsel verifying that the other driver was not an employee or agent of the settling parties; an unchallenged declaration by the plaintiff's counsel that opposing counsel was always aware the plaintiff would pursue his action against the other driver; the motion for determination of good faith settlement and the ruling on the motion, neither of which mentioned the other driver by name; and the dismissal, which applied only to the owner and the broker. The court reasoned that if the parties had intended to release the other driver they would have named him specifically, given his important role in the accident. The fact that he was not named made the term "all persons" ambiguous and raised a triable issue regarding the parties' intent to include the other driver in the release. (*Appleton, supra,* 27 Cal.App.4th at pp. 554-557.)

We believe the situation presented in *General Motors, Lama, Appleton,* and the case at bench is best suited to resolution under well-settled contract principles governing third party beneficiaries.[6] Before turning to those principles, we briefly review the circumstances in which the parties signed the settlement agreement and the releases in this case.

[6]Fredericks objects to Neverkovec's reliance on the third party beneficiary theory, which Neverkovec did not raise in his summary judgment papers. The objection is a proper one, and we have the discretion to deem the argument waived. However, under the circumstances of this case we choose to address the issue. The third party beneficiary theory was mentioned in both *Lama* and *General Motors,* which are Fredericks's principal authorities. The point was briefed in Moore's motion papers, and thus Fredericks had the opportunity to respond to it below. The underlying facts are undisputed. The situation of third parties seeking to enforce general releases presents important legal issues that have recurred and are likely to recur yet again, and the application of third party beneficiary rules in such cases has not yet received extended consideration from any California appellate court. (*Canaan* v. *Abdelnour* (1985) 40 Cal.3d 703, 722, fn. 17 [221 Cal.Rptr. 468, 710 P.2d 268, 69 A.L.R.4th 915]; *In re Marriage*

The settlement agreement was jointly negotiated by counsel for Howard (acting for her son Larry Neverkovec), Fredericks, and Moore. The object of the agreement was to divide the proceeds of the policy covering the car driven by Jason Neverkovec, and insured by Howard's employer, Alexander & Associates. The parties agreed to divide the policy limits and to release their claims against Jason only. Moore's attorney forwarded the agreement to the insurer with a letter stating: "My understanding is you will either accept this as a full release or send individual releases to each party and pay each party with a separate check." The insurer took the option of obtaining individual releases on its own terms. Accordingly, the general release signed by Howard on Larry's behalf was not jointly negotiated among the claimants. Each claimant separately executed, at different times and places, releases sent to them by the insurer, which was acting on behalf of its insureds (Howard's employer and Jason). By signing the release, Howard agreed with the insurer that Larry's claims were satisfied. Fredericks was a third party to that release agreement.

█ Release agreements are governed by the generally applicable law of contracts. (*Appleton, supra*, 27 Cal.App.4th at p. 554; *General Motors, supra*, 12 Cal.App.4th at p. 439.) "A third party should not be permitted to enforce covenants made not for his benefit, but rather for others. He is not a contracting party; his right to performance is predicated on the contracting parties' intent to benefit him." (*Murphy* v. *Allstate Ins. Co.* (1976) 17 Cal.3d 937, 944 [132 Cal.Rptr. 424, 553 P.2d 584]; *Harper* v. *Wausau Ins. Co.* (1997) 56 Cal.App.4th 1079, 1087 [66 Cal.Rptr.2d 64]; *Bancomer, S. A.* v. *Superior Court* (1996) 44 Cal.App.4th 1450, 1458 [52 Cal.Rptr.2d 435]; *Kalmanovitz* v. *Bitting* (1996) 43 Cal.App.4th 311, 316 [50 Cal.Rptr.2d 332]; *Jones* v. *Aetna Casualty & Surety Co.* (1994) 26 Cal.App.4th 1717, 1724 [33 Cal.Rptr.2d 291].) The circumstance that a literal contract interpretation would result in a benefit to the third party is not enough to entitle that party to demand enforcement. The contracting parties must have intended to confer a benefit on the third party. (*Walters* v. *Calderon* (1972) 25 Cal.App.3d 863, 871 [102 Cal.Rptr. 89]; *Bancomer, S. A.* v. *Superior Court, supra*, 44 Cal.App.4th at p. 1458; *Kalmanovitz* v. *Bitting, supra*, 43 Cal.App.4th at p. 314; *Jones* v. *Aetna Casualty & Surety Co., supra*, 26 Cal.App.4th at pp. 1724-1725.)

It is not necessary for the third party to be specifically named in the contract, but such a party bears the burden of proving that the promise he seeks to enforce was actually made to him personally or to a class of which

*of Moschetta* (1994) 25 Cal.App.4th 1218, 1227-1228 [30 Cal.Rptr.2d 893]; *Resolution Trust Corp.* v. *Winslow* (1992) 9 Cal.App.4th 1799, 1809 [12 Cal.Rptr.2d 510].)

he is a member.[7] (*Garratt* v. *Baker* (1936) 5 Cal.2d 745, 748 [56 P.2d 225]; *Garcia* v. *Truck Ins. Exchange* (1984) 36 Cal.3d 426, 436 [204 Cal.Rptr. 435, 682 P.2d 1100]; *Harper* v. *Wausau Ins. Co.*, *supra*, 56 Cal.App.4th at pp. 1086-1087; *Bancomer, S. A.* v. *Superior Court*, *supra*, 44 Cal.App.4th at p. 1458.) In making that determination, the court must read the contract as a whole in light of the circumstances under which it was entered. (*Garcia* v. *Truck Ins. Exchange*, *supra*, 36 Cal.3d at p. 437; *Bancomer, S. A.* v. *Superior Court*, *supra*, 44 Cal.App.4th at p. 1458; *Jones* v. *Aetna Casualty & Surety Co.*, *supra*, 26 Cal.App.4th at p. 1725.)

■ Thus, to obtain summary judgment on the ground that a general release has discharged him from liability, a third party to the release agreement must affirmatively show that the parties intended to release him. The burden of proof is on the third party, under both contract law and the summary judgment statute. (§ 437c, subd. (o).) Because the court must consider the circumstances of the contracting parties' negotiations to determine whether a third party not named in the release was an intended beneficiary, it will seldom be sufficient for the third party simply to rely on a literal application of the terms of the release. ■ "The fact that . . . the contract, if carried out to its terms, would inure to the third party's benefit[,] is insufficient to entitle him or her to demand enforcement." (*Jones* v. *Aetna Casualty & Surety Co.*, *supra*, 26 Cal.App.4th at pp. 1724-1725, following *Walters* v. *Calderon*, *supra*, 25 Cal.App.3d at p. 871.) "However broad may be the terms of a contract, it extends only to those things concerning which it appears that the parties intended to contract." (Civ. Code, § 1648.) "Whether a third party is an intended beneficiary . . . to the contract involves construction of the parties' intent, gleaned from reading the contract as a whole in light of the circumstances under which it was entered." (*Jones* v. *Aetna Casualty & Surety Co.*, *supra*, 26 Cal.App.4th at p. 1725.)

■ Here, Fredericks offered little extrinsic evidence of the contracting parties' intent, relying instead on a literal interpretation of the terms of the release agreement and the holdings in *General Motors* and *Lama*. Indeed, Fredericks objected to the extrinsic evidence offered by the opposing parties, contending the parol evidence rule precluded consideration of extrinsic evidence contradicting the release term including "any other person . . . charged or chargeable with responsibility or liability" resulting from the

---

[7]This long-standing principle of contract law supports the *General Motors* court's ruling that section 877 does not require specific identification of all released parties. (12 Cal.App.4th at pp. 439-440.)

accident. ▄▄ ▆ He renews that argument on appeal.[8] ▆▆ We are not persuaded.

Parol evidence is admissible to resolve an ambiguity (see, e.g., *General Motors, supra,* 12 Cal.App.4th at p. 441), and the repayment clause of the release agreement signed by Howard renders it ambiguous, as we discuss below. Furthermore, even an apparently unambiguous general release is properly interpreted in light of the surrounding circumstances. Section 1856, which codifies the parol evidence rule, bars "evidence of any prior agreement or of a contemporaneous oral agreement" that contradicts a final written agreement. (§ 1856, subd. (a).) But the statute "does not exclude other evidence of the circumstances under which the agreement was made or to which it relates, as defined in Section 1860, or to . . . otherwise interpret the terms of the agreement . . . ." (§ 1856, subd. (g); *Garcia* v. *Truck Ins. Exchange, supra,* 36 Cal.3d at p. 435.) Section 1860 provides: "For the proper construction of an instrument, the circumstances under which it was made, including the situation of the subject of the instrument, and of the parties to it, may also be shown, so that the Judge be placed in the position of those whose language he is to interpret." (See also § 1856, subd. (e)

---

[8]Before 1979, the parol evidence rule did not apply in an action between a contracting party and a stranger to the contract. The Legislature abolished this limitation in 1978 by revising section 1856. Therefore, Fredericks is free to object on parol evidence grounds. (*Kern County Water Agency* v. *Belridge Water Storage Dist.* (1993) 18 Cal.App.4th 77, 86-87 [22 Cal.Rptr.2d 354]; 2 Witkin, Cal. Evidence (3d ed. 1986) Documentary Evidence, §§ 1011-1012, pp. 954-955. See also *Garcia* v. *Truck Ins. Exchange, supra,* 36 Cal.3d at p. 435, fn. 3, and *General Motors, supra,* 12 Cal.App.4th at p. 441, fn. 1, in which the courts noted the amendment but did not decide its effect.) As discussed above, however, we find no conflict between the parol evidence rule and the necessity to consult extrinsic evidence under the circumstances of this case.

We note that the situation before us is not implicated in the criticism of the former restriction against third party use of the parol evidence rule found in the authorities cited by Witkin and the *Kern County* court. Corbin declares that his criticism of the restriction "is not in the least applicable" to a case involving the actual intention of parties to a release regarding the operation of the instrument on the legal relations between one of them and a third party. (3 Corbin on Contracts (1960) § 596, p. 577, fn. 11.5.) Wigmore states that the proper application of the rule is to exclude extrinsic utterances, even in cases involving third parties, if they are offered *"for the very purpose for which the writing has superseded them as the legal act."* (9 Wigmore on Evidence (Chadbourn rev. 1981) § 2446, p. 156, italics in original.) Here, excluding extrinsic evidence would beg the question of the writing's purpose, since the very issue to be resolved is whether the parties actually intended to bar all future third party claims when they executed the release. As Wigmore notes, "[t]he theory of the rule is that the parties have determined that a particular document shall be made the sole embodiment of *their* legal act for certain legal purposes [citation]. Hence, so far as that effect and those purposes are concerned, they must be found in that writing and nowhere else, no matter who may desire *to avail himself of it.* But so far as other effects and purposes are concerned, the writing has not superseded their other conduct, nor other persons' conduct, and it may still be resorted to for any other purpose for which it is material, either by other persons or by themselves." (*Ibid.,* italics in original.)

[evidence relevant to issues concerning "imperfection of the writing" is not excluded]; *City of Atascadero* v. *Merrill Lynch, Pierce, Fenner & Smith, Inc.* (1998) 68 Cal.App.4th 445, 473 [80 Cal.Rptr.2d 329] [extrinsic evidence of objective circumstances is properly consulted to determine mutual intent of contracting parties].)

■ Our Supreme Court has held that "[i]n determining the meaning of a written contract allegedly made, in part, for the benefit of a third party, evidence of the [surrounding] circumstances and negotiations of the parties in making the contract is both relevant and admissible. And, '[i]n the absence of grounds for estoppel, the contracting parties should be allowed to testify as to their actual intention. . . .' (4 Corbin, Contracts (1971 supp.) § 776, p. 8; see, e.g., *Hoge* v. *Farmers Market & Supply Co. of Las Cruces* (1956) 61 N.M. 138 [296 P.2d 476]; *United States* v. *Springfield Fire & Marine Ins. Co.* (8th Cir. 1953) 207 F.2d 935.)" (*Garcia* v. *Truck Ins. Exchange, supra,* 36 Cal.3d at p. 437.) ■ No grounds for estoppel appear in this case. Fredericks did not claim that he relied on the release to his detriment; he merely sought protection in a literal interpretation of its terms after he was sued by Larry Neverkovec.

■ We note that while the contracting parties may testify regarding their actual intent, the sufficiency of such evidence must be determined according to the usual objective standard of contract interpretation.[9] The trier of fact must decide how a reasonable person in the releasing party's shoes would have believed the other party understood the scope of the release. (Civ. Code, § 1649; *Bank of the West* v. *Superior Court* (1992) 2 Cal.4th 1254, 1264-1265 [10 Cal.Rptr.2d 538, 833 P.2d 545]; *Medical Operations Management, Inc.* v. *National Health Laboratories, Inc.* (1986) 176 Cal.App.3d 886, 893 [222 Cal.Rptr. 455].) Thus, testimony by the releasing party regarding who *he* thought he was releasing, while it may serve to explain the situation, does not determine the legal effect of the release. (*General Motors, supra,* 12 Cal.App.4th at pp. 441-442, fn. 2.) How a reasonable person would view the other party's understanding of the release is generally a matter of inference based on the extrinsic evidence. Unless that extrinsic evidence is in conflict, the question is one of law. (See, e.g., *Medical Operations Management, Inc.*

---

[9]We share our concurring colleague's suspicion of testimony by contracting parties regarding their undisclosed intentions. However, we are satisfied that in the third party beneficiary context, *Garcia* and the authorities it cites stand for the proposition that such testimony is properly admitted to assist the trier of fact in understanding the surrounding circumstances and negotiations, but is not controlling on the ultimate issue of contract interpretation. (See *Garcia* v. *Truck Ins. Exchange, supra,* 36 Cal.3d at p. 437; and see *United States* v. *Springfield Fire & Marine Ins. Co.* (8th Cir. 1953) 207 F.2d 935, 936-937, and fn. 1; 4 Corbin on Contracts (1999 supp.) § 776, p. 21.)

v. *National Health Laboratories, Inc., supra,* 176 Cal.App.3d at pp. 891-892, 893.) On a motion for summary judgment, the court may determine which inferences are "reasonably deducible from the evidence," and may grant summary judgment if there is no conflict with other reasonable inferences or evidence. (§ 437c, subd. (c).)

 With these principles in mind, we turn to the terms of the release in this case and the evidence of the circumstances in which it was signed. The agreement purports to release anyone chargeable with liability for Larry Neverkovec's injuries.[10] It declares that the payment given in exchange for the release "is made to terminate further controversy respecting all claims for damages" that Larry had made or might make in the future. However, it also provides that Howard (on Larry's behalf) must "repay" any additional amounts that anyone chargeable with liability for Larry's injury might be compelled to pay in the future. This repayment provision is curious, and creates ambiguity as to the parties' actual intentions. If the release was to be operative against anyone liable for Larry's injuries, Larry could not be expected to recover further amounts from which to make repayments. (For the full text of the release agreement, see fn. 1, *ante.*)

The *General Motors* and *Lama* courts emphasized the benefit to the insured of foreclosing future litigation as a consideration supporting strict enforcement of broad general releases. (*General Motors, supra,* 12 Cal.App.4th at p. 443; *Lama,* 14 Cal.App.4th at p. 63.) In this case, however, the release anticipates the possibility that some liable parties might be compelled to make further payments to Larry. Moreover, even if the broad language of the release were deemed sufficient to shift the burden of proof in the summary judgment proceeding to Howard, the circumstances surrounding the release agreement disclose a triable issue regarding the parties' intent to foreclose any claim against Fredericks. The release was provided by the insurer to implement a settlement agreement negotiated among claimants, including Fredericks, who had agreed to release only Jason Neverkovec. After the release was signed, Alexander & Associates joined with Howard (acting for Jason) to seek a determination of good faith settlement under section 877.6. The only purpose for such a motion is to "bar any other joint tortfeasor or co-obligor from any further claims against the settling tortfeasor." (§ 877.6, subd. (c).) ██ ██ If the release had accomplished

---

[10]The release also purports to release anyone liable to Larry for damages arising from "any act or occurrence up to the present time," not just from the accident with Fredericks. Thus, literally construed, the release would bar Larry from pursuing a claim against someone who stole property from him, or committed any other actionable offense.

that purpose already, there would have been no reason for Jason or Alexander & Associates to seek the protection offered by section 877.6.[11]

Howard's opposition to the summary judgment motion included a declaration that she understood the release to apply to her son Jason, her employer Alexander, and Alexander's businesses. She specifically did not intend to release Fredericks, and signed the release "because my attorney advised me that it would be okay and because I understood that I was releasing people who might be associated with the vehicle in which my son was a passenger, but not the other vehicle." Howard's counsel declared he had intended to proceed against Fredericks at the time of the release, but was waiting because the statute of limitations was tolled by Neverkovec's minority and because the full extent of Neverkovec's injuries was uncertain. Moore's counsel declared she had intended to file a complaint against Fredericks, and did so before her client signed his release. She stated "[i]n my experience with automobile accident cases, the insurers write releases to protect their entity and their insureds from further claims." The insurer's representative declared that the settlements were intended to fully and finally terminate all claims against Howard and Jason. These statements, to the extent they merely reveal the declarants' undisclosed intentions, would alone be insufficient to establish a triable issue on the determinative question of how a reasonable person signing the release would have understood the insurer's intentions regarding the release of third parties. However, in view of the terms of the release and the surrounding circumstances—particularly the settlement agreement preceding the release and the motion for determination of good faith settlement following it—we conclude that whether Fredericks was actually an intended beneficiary of the release agreement is a triable issue.

---

[11]Since the court found that the settlement was entered in good faith, Jason and Alexander & Associates were protected from any liability in Larry's action against Fredericks, without having to rely on the release signed by Howard. The *General Motors* court cited *Singer Co.* v. *Superior Court, supra,* 179 Cal.App.3d 875, for the proposition that a tortfeasor settling in good faith might still be "dragged into" a lawsuit. (*General Motors, supra,* 12 Cal.App.4th at pp. 442-443.) *Singer,* however, makes it difficult for such a settling party to be brought into subsequent litigation by a cross-complaining joint tortfeasor. "The cross-complainant must allege, initially or by amendment, (1) that he is exposed to substantial liability on the plaintiff's claim, (2) that his relationship to the subject matter of plaintiff's claim was known or reasonably should have been known to the settling parties, and (3) that he is therefore a necessary party who was not given notice of the prior good faith adjudication. A settlor who objects to the cross-complaint need only move to dismiss on the basis of the prior good faith determination; the cross-complainant must then prove to the satisfaction of the court his status as a necessary party, i.e., a likely defendant, at the time of settlement or face a judgment of dismissal. [¶] Moreover, even if a cross-complainant overcomes this initial hurdle, he must still bear the burden of proving at a duly noticed hearing pursuant to section 877.6 that the prior settlement was not in good faith and thus he is not bound by the good faith determination but may pursue his cross-complaint for contribution and partial indemnity." (179 Cal.App.3d at pp. 892-893.)

The problems arising from general releases like those involved in *General Motors*, *Lama*, *Appleton*, and this case have been analyzed by numerous appellate courts in other jurisdictions with statutes like section 877, providing that a release does not discharge other parties "unless its terms so provide." The cases have been ably collected elsewhere, and we need not review them in detail here. Generally, three different approaches have developed: (1) a minority view holding that a general release absolutely bars the settling party from proceeding against other tortfeasors; (2) a view presuming that parties not named or otherwise specifically identified are not released; and (3) a more or less equally prevalent view that the court must determine whether the parties intended to release the unnamed third party. Among courts following an "intent rule," some hold extrinsic evidence of the parties' intentions admissible even if the language of the release is unambiguous, while others hold that extrinsic evidence may only be consulted to resolve an ambiguity. (See, e.g., *Noonan* v. *Williams* (D.C. 1996) 686 A.2d 237, 241-244, *Hansen* v. *Ford Motor Co.* (1995) 120 N.W. 203 [900 P.2d 952, 956-958], and *Sims* v. *Honda Motor Co.* (1993) 225 Conn. 401 [623 A.2d 995, 999-1001].)[12]

As we have explained, California contract law requires a third party to show he was an intended beneficiary of a general release and permits extrinsic evidence of the contracting parties' intent and the circumstances in which the agreement was executed.

In closing, we urge counsel on both sides to avoid overly broad, loose terms in release agreements. We suggest to counsel for insurers that the benefits of sweeping release terms are questionable in view of the high volume of litigation such terms have engendered. In California, consideration should be given to the statutory protection provided to parties settling in good faith under sections 877 and 877.6, which ought to reduce the temptation to release not just the insured but also the population at large.

---

[12]Several courts have expressed the view that a third party should not enjoy the same privilege to rely on the four corners of a release agreement as the parties themselves. "A tortfeasor who has taken no part in the satisfaction of a plaintiff's claim should not gratuitously benefit from settlement arrangements undertaken at the time and expense of others . . . . Interpreting a release by looking only to the four corners of the document poses too great a risk that a plaintiff will be trapped into surrendering a separate cause of action when this was not his or her intent." (*Hansen* v. *Ford Motor Co.*, supra, 900 P.2d at p. 958; see also *Neves* v. *Potter* (Colo. 1989) 769 P.2d 1047, 1054 [noting "Colorado's unsympathetic position toward parties who seek to take gratuitous advantage of an agreement when they are not parties to the agreement"]; *McInnis* v. *Harley-Davidson Motor Co., Inc.* (D.R.I. 1986) 625 F.Supp. 943, 952 ["Rhode Island courts have adopted a consistently unsympathetic position toward parties who seek to take gratuitous advantage of agreements in which they took no part"].) On California law regarding third parties and the parol evidence rule generally, see footnote 8, *ante*.

Counsel for claimants should advise their clients not to sign releases that appear to bar claims the client does not intend to give up. The adage that an ounce of prevention is worth a pound of cure applies here—attorneys' energies are better spent making sure that release agreements accurately reflect their clients' intentions than in litigating what their clients *really* intended when they signed agreements including terms that counsel failed to analyze in the circumstances of the specific case.

## DISPOSITION

The judgment is reversed. The trial court is directed to enter an order denying Fredericks's motion for summary judgment against Neverkovec. The parties shall bear their own costs on appeal.

Corrigan, Acting P. J., concurred.

**WALKER, J.**—I concur, but write separately to clarify a point addressed by the majority. While concluding, correctly, that a party's subjective intent cannot create a triable issue of material fact regarding a contract's objectively reasonable meaning, the majority suggests that such evidence is nonetheless admissible. (Maj. opn., *ante*, at pp. 350-351, 352.) I believe that such evidence is not only insufficient to create a triable issue, but is irrelevant as proof of the party's contractual intent, and therefore *inadmissible*. (See *Zurich General Acc. & Liability Assur. Co.* v. *Industrial Acc. Commission* (1933) 132 Cal.App. 101, 104 [22 P.2d 572] [mutual assent understood from the reasonable meaning ascribed to the parties' words and acts, and not from their unexpressed,, secret intentions or understandings].) *Garcia* v. *Truck Ins. Exchange* (1984) 36 Cal.3d 426 [204 Cal.Rptr. 435, 682 P.2d 1100], cited by the majority for the contrary proposition, concerned the application of the parol evidence rule and did not consider the relevancy of evidence regarding the contracting parties' subjective intent.