DUARTE, J.,
Concurring. — Although unnecessary to our disposition here, I feel compelled to echo the concerns expressed by my colleagues in other districts regarding the use of “overly broad, loose terms in release agreements.” (Neverkovec v. Fredericks (1999) 74 Cal.App.4th 337, 354 [87 Cal.Rptr.2d 856]; see Hess v. Ford Motor Company (2002) 27 Cal.4th 516, 530 [117 Cal.Rptr.2d 220, 41 P.3d 46].)
The widespread use of global “all other persons” releases raises policy concerns as to fairness. (See Rodriguez v. Oto (2013) 212 Cal.App.4th 1020, 1031 [151 Cal.Rptr.3d 667].) As we see here, the language of the release may not be given much attention; by signing, a plaintiff (such as Ronald Lee Cline) may give up rights he did not mean to give up, with resulting unfortunate consequences. “A stranger to the release may receive a windfall, i.e., an excuse from liability the law would otherwise require him to bear; the plaintiff may be deprived of a recovery to which he would otherwise be entitled, and which is necessary to make him whole; and this loss in turn may force the plaintiff to pursue — and the courts to entertain — the less certain and more burdensome remedy of a malpractice action against the attorney.” (Id. at p. 1032.)
As others have written, counsel should “study the language of the release carefully to ascertain whether it may impair claims the plaintiff should *714 reserve for further prosecution” (Rodriguez v. Oto, supra, 212 Cal.App.4th at p. 1032) and “advise their clients not to sign releases that appear to bar claims the client does not intend to give up” (Neverkovec v. Fredericks, supra, 74 Cal.App.4th at p. 355).