Filed 8/29/24  Wang v. Go CA1/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| YINGQIAN WANG,<br><br>    Plaintiff and Appellant,<br><br>v.<br><br>ANTHONY GO, RAYMOND GO, QUAN YUNG GO REVOCABLE TRUST, et al.,<br><br>    Defendants and Respondents. | A167231<br><br>(San Francisco City & County Super. Ct. No. CGC-21-591494) |

Plaintiff Yingqian[1] Wang sued Anthony Go, Raymond Go, and the Quan Yung Go Revocable Trust (collectively, defendants)[2] for a variety of claims related to her time living in a San Francisco residence with Raymond Go.  She left that residence pursuant to the settlement of an unlawful detainer action brought by Anthony Go that included a release of all claims. The trial court granted summary judgment of the instant action on the basis

---

[1]    Wang's first name also appears throughout the record as "Ying," but we use "Yingqian" as that is how her name is set forth in her briefs.

[2]    Wang listed "Does 1-10" as additional defendants in her complaint but did not name them during the trial court proceedings and does not discuss them in her briefs.  Therefore, she has forfeited any argument related to the Does and we do not consider them for purposes of this appeal.  (See *Allen v. City of Sacramento* (2015) 234 Cal.App.4th 41, 52.)

that Raymond Go was an intended third-party beneficiary of that release. We affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

In 2016, Wang immigrated to the United States from China and enrolled in a graduate program at the Academy of Art University in San Francisco. She passed her English course at the university in 2017 and thereafter took all of the courses for her program entirely in English. Wang graduated in May 2019, receiving a master's degree in industrial design.

In October 2018, Wang began talking to Raymond Go on WeChat (a mobile messaging application). Raymond Go invited Wang to stay at his house, located on Vallejo Street in San Francisco, for as long as she wanted. Wang agreed and moved her belongings into the living room. She then moved into an empty bedroom in the house and stayed there for over a year; no rent was ever paid. Raymond Go and Wang got into disputes over various topics, and Wang alleges that Raymond Go physically and verbally assaulted her.

The room that Wang resided in was owned by Raymond's brother, Anthony Go, as trustee of the Quan Yung Go Revocable Trust (Trust). Anthony Go did not learn that Wang had moved in until October 2019, when he returned from an extended international business trip. Through counsel Jerod Hendrickson, Anthony Go sent Wang a notice to terminate her tenancy but Wang failed to vacate the premises.

*Unlawful Detainer Action*

In November 2019, Anthony Go, as trustee of the Trust, filed an unlawful detainer action against Wang. The unlawful detainer complaint referenced Raymond Go by stating that Wang received a key from and took possession of the premises with the permission of "Plaintiff's agent."

2

Through counsel Cynthia Barclay, Wang filed an answer raising numerous defenses, including that "Plaintiff seeks to evict defendant based on an act against defendant . . . that constitutes domestic violence. Defendant was issued a protective order against the Plaintiff's family member residing at the property"—referring to Raymond Go.

*Settlement Negotiations and Stipulation*

The parties entered settlement negotiations (through counsel Hendrickson and Barclay) to resolve the unlawful detainer action. The terms of the negotiated Stipulation provided Wang would vacate the premises in exchange for Anthony Go paying her $3,000 and dismissing the action.

Central to this appeal, the parties negotiated a mutual release as part of the Stipulation and, as part of those negotiations, discussed carving Raymond Go out of the release. Counsel for Anthony Go, Hendrickson, proposed the following release:

> "Except as set out herein, there is a mutual release of all claims and causes of action that either party may have had as against the other side as of the date this document is executed by the respective parties, including those claims and causes of action which are known and normally retained under Civil Code Section 1542. . . .[3] The parties warrant that each has been advised of an understands the significance of an intends to waive any and all rights prescribed in [section] 1542 . . . . The parties hereby expressly waive the provisions of [section] 1542 . . . . The parties hereto fully understand that they cannot hereafter make further claims or seek any further recovery of any nature whatsoever based upon, arising out of, or in connection with Defendant's occupancy of the Premises."

---

[3] Civil Code section 1542 provides: "A general release does not extend to claims that the creditor or releasing party does not know or suspect to exist in his or her favor at the time of executing the release and that, if known by him or her, would have materially affected his or her settlement with the debtor or released party." (Civ. Code, § 1542.) All further undesignated statutory references are to the Civil Code.

. . .

> "This release also binds individuals, heirs, co-owners, spouses, assignees, agents, attorneys, shareholders, subsidiaries, related entities, predecessors, successors, officers, directors, managers, employees, agents, tenants, assigns and affiliates, past and present and future, and each of them of the parties."

The Stipulation listed the parties as Anthony Go (as trustee) and Wang.

In January 2020, Wang met with her attorney, Barclay, to discuss the proposed Stipulation in detail, including the release language and its effect as to both Wang and Anthony Go. Barclay communicated with Wang in English; Wang never indicated to Barclay that she could not understand the language of the Stipulation and did not ask for any portion to be translated into her native language (Mandarin). Wang told Barclay that she wanted to add a "carve out" to the waiver for claims against Raymond Go.

Barclay then emailed Hendrickson stating: "We request that a carve out to the waiver of claims be made for Ms. Wang to pursue, if she desires, any claim she may have against Raymond Go." Barclay suggested the following language: " 'Defendant, however, shall retain any and all claims or causes of action that Defendant may have against Raymond Go.' " Hendrickson countered that carving out Raymond Go from the release would only be acceptable if the Stipulation also contained a carve out for Anthony Go to pursue claims against Wang for property damage. Barclay communicated this offer to Wang, and Wang refused.

Ultimately, no carve out (for either Wang or Raymond Go) was added to the Stipulation. However, at Wang's request, Barclay crossed out the word "tenants" from the list of those bound by the release, and Barclay and Wang initialed above that modification. Wang and Anthony Go signed the Stipulation. Wang thereafter moved out of the house and was paid $3,000.

4

*Wang's Complaint*

In May 2021, Wang filed the complaint underlying this appeal. Wang raised six causes of action: negligence related to the maintenance of the property against all defendants; negligence related to management of the property against the Trust; a violation of the California Fair Employment and Housing Act (Gov. Code, § 12900 et seq.) against the Trust and Raymond Go; and claims of battery, assault, and intentional infliction of emotional distress against both Anthony Go and Raymond Go.

Defendants filed an answer to the complaint raising various defenses, including that the settlement of the unlawful detainer action precluded Wang's claims.

*Motion for Summary Judgment and Opposition*

In August 2022, defendants moved for summary judgment[4] on the basis that Wang had signed the Stipulation that "fully (and mutually) released '[a]ll claims and causes of action that either party may have had as against the other side.' "

In support of the motion, defendants included a declaration by Hendrickson attesting to the settlement negotiations with Barclay, as described above. Hendrickson asserted the Stipulation applied not only to the parties in the unlawful detainer action but also to Raymond Go: Wang alleged in her answer to the unlawful detainer action that Raymond Go had abused her, and whether to carve out claims against Raymond Go was a "major issue" that ultimately resulted in those claims *not* being carved out. Hendrickson had not objected to the crossing out of " 'tenants' " from those

---

[4] The motion was titled "Motion for Summary Judgment, or in the Alternative Motion to Enforce the Prior Settlement Agreement Between the Parties." As the trial court and parties have done, we refer to it simply as a motion for summary judgment.

bound by the release as he "considered it meaningless." Attached as exhibits to Hendrickson's declaration were the unlawful detainer complaint, Wang's answer, the signed Stipulation, and the email from Barclay to Hendrickson requesting the carve out for claims against Raymond Go.

Defendants also provided a deposition of Barclay, in which she discussed the negotiations in the unlawful detainer action as described above.[5] Barclay averred that Wang agreed to sign the Stipulation even though it did not contain a carve out for Raymond Go. Wang never indicated to Barclay that she did not understand the discussion of the carve outs or the terms of the Stipulation. As to the crossing out of the word "tenants" from the Stipulation, Barclay stated: "I explained to [Wang] that we took out the term 'tenants,' because the person she was concerned about was Raymond Go and that he was a tenant, but that would not -- that did not represent that she would be able to sue in the future."

Wang opposed the motion for summary judgment. She argued a triable issue of fact existed as to whether the release in the Stipulation was binding as to Raymond Go. Wang asserted that, as Raymond Go was not a party to the Stipulation, and the release specifically referred to " 'party' " or " 'parties,' " she only released the right to bring claims against Anthony Go as trustee of the Trust. Wang further contended an issue of triable fact existed as to whether she lacked the mental capacity to understand the Stipulation.

In a supporting declaration, Wang stated that she had expressed to Barclay that she wished to sue Raymond Go in the future, leading Barclay to send the email seeking the carve out for claims against him. Wang declared she and Barclay crossed out the word " 'tenants' " in the Stipulation because

---

[5] The was a determination of waiver of attorney-client communications for purposes of the deposition.

6

Wang wanted to "make sure" that she was able to sue Raymond Go in the future.

As to her ability to understand the Stipulation, Wang stated that Barclay explained its terms without a translator, and the document was never translated to Mandarin. Wang averred that she had required a Mandarin interpreter throughout the instant litigation; had only "barely passed" her English course in graduate school after initially failing; and communicated with her employer via email with the assistance of an online translation program. She asserted that, in addition to the language barrier, her mental capacity prevented her from understanding the extent of the Stipulation, as she had a concussion in August 2018 and was being treated for PTSD, depression, anxiety, and suicidal ideations at the time of the settlement negotiations (in January 2020).

Wang submitted medical notes from February and July 2019 indicating she had symptoms of depression, anxiety, suicidal ideation, post-concussion syndrome, and mild traumatic brain injury.

*Trial Court's Ruling*

In a December 2022 tentative ruling granting the motion for summary judgment, the court found defendants shifted their burden of proof as to whether the Stipulation in the prior unlawful detainer action barred the instant action, and that Wang failed to create a triable issue of fact with "competent admissible evidence."

After oral argument on December 14, 2022, the court adopted the tentative ruling virtually verbatim and granted the motion for summary judgment on December 19, 2022. It subsequently entered judgment in favor of defendants. Wang appealed.

7

## I. Standard of Review

"Summary judgment is appropriate when there are no triable issues of material fact such that the moving party is entitled to judgment as a matter of law on all causes of action." (*Choi v. Sagemark Consulting* (2017) 18 Cal.App.5th 308, 318 (*Choi*).)

"We review an order granting summary judgment de novo, applying the same three-step analysis as the trial court. [Citations.] First, we identify the causes of action framed by the pleadings. Second, we determine whether the moving party has satisfied its burden of showing the causes of action have no merit because one or more elements cannot be established, or that there is a complete defense to that cause of action. Third, if the moving party has made a prima facie showing that it is entitled to judgment as a matter of law, the burden of production shifts and we review whether the party opposing summary judgment has provided evidence of a triable issue of material fact as to the cause of action or a defense. [Citations.] A party opposing summary judgment may not 'rely upon the allegations or denials of its pleadings' but must set forth 'specific facts' beyond the pleadings to show the existence of a triable issue of material fact. [Citation.] The evidence must be viewed in the light most favorable to the nonmoving party." (*Choi, supra,* 18 Cal.App.5th at p. 318.) We independently determine whether the record supports the trial court's conclusion that the asserted claims fail as a matter of law. (*Miller v. Pacific Gas & Electric Co.* (2023) 97 Cal.App.5th 1161, 1166.)

## II. The Release Bars the Complaint as a Matter of Law

A valid release of claims, such as the release in the Stipulation, may operate as a complete defense to a civil action. (See *Rodriguez v. Oto* (2013) 212 Cal.App.4th 1020, 1026.) As the parties agree, the release here did not

expressly mention Raymond Go.  Hence, we must determine whether Raymond Go may enforce the release as a third-party beneficiary.  (See *Neverkovec v. Fredericks* (1999) 74 Cal.App.4th 337, 347–349 (*Neverkovec*); § 1559.)[6]

## A.  Applicable Law

Release agreements are governed by general principles of contract law. (*Neverkovec*, *supra*, 74 Cal.App.4th at p. 348.)  Our goal when interpreting a contract is to determine and give effect to the mutual intention of the parties as it existed at the time the contract was executed.  (*Cline v. Homuth* (2015) 235 Cal.App.4th 699, 705 (*Cline*); see § 1636.)  If possible, the intention of the parties is to be determined from the language of the contract alone, but " '[a] contract may be explained by reference to the circumstances under which it was made, and the matter to which it relates.' "  (*Cline*, at p. 705; §§ 1639, 1647.)

" '[I]t is often impossible for the parties to be precise in expressing their intent in a written document,' " and, therefore, courts " 'should preliminarily consider all credible evidence to ascertain the intent of the parties.' "  (*Cline*, *supra*, 235 Cal.App.4th at p. 705.)  The California Supreme Court has stated: " 'The test of admissibility of extrinsic evidence to explain the meaning of a written instrument is not whether it appears to the court to be plain and

---

[6]     Wang does not dispute that the release extends to the Trust, but argues for the first time in her reply brief that it does not extend to Anthony Go in his individual capacity.  However, "we do not consider points raised for the first time in the reply brief absent a showing of good cause for the failure to present them earlier."  (*Shaw v. Los Angeles Unified Sch. Dist.* (2023) 95 Cal.App.5th 740, 754.)  As Wang provides no reason for failing to raise this argument in her opening brief, we do not consider it.  (See *ibid.*)  In any event, there is no indication in the record that Wang reasonably believed she was retaining the right to sue Anthony Go in his individual capacity or that he was not part of "the other side" of the unlawful detainer action.

9

unambiguous on its face, but whether the offered evidence is relevant to prove a meaning to which the language of the instrument is reasonably susceptible.' " (*Garcia v. Truck Ins. Exchange* (1984) 36 Cal.3d 426, 435 (*Garcia*).)

A third party's rights under a contract are predicated on the contracting parties' intent to benefit him. (*Garcia, supra,* 36 Cal.3d at p. 436.) Therefore, "to obtain summary judgment on the ground that a general release has discharged him from liability, a third party to the release agreement must affirmatively show that the parties intended to release him." (*Neverkovec, supra,* 74 Cal.App.4th at p. 349.) The burden of proof is on the third party to make this showing. (*Ibid.*)

As discussed below, we conclude defendants carried their initial burden of showing Raymond Go was an intended third-party beneficiary to the release, and Wang failed to raise triable issues of fact to defeat the motion for summary judgment.

## B. Defendants Made a Prima Facie Showing that the Stipulation Barred Wang's Complaint

A defendant moving for summary judgment has the initial burden of making a sufficient showing that the action is meritless based on a complete defense. (*Neverkovec, supra,* 74 Cal.App.4th at p. 344.) Here, defendants met their initial burden of presenting evidence that the release in the Stipulation extended to Raymond Go and operated as a complete defense to Wang's lawsuit.

As defendants argued in the motion for summary judgment, the Stipulation contained broad language that released "all claims and causes of action that either party may have had as against the other side." The release also contained a waiver of the provisions of section 1542—which prohibits

10

releases of unknown claims—and indicated the parties had been advised of, and understood the significance of, waiving those rights. (See § 1542.) Therefore, the release broadly covered any possible civil claims Wang could bring against "the other side" that she "may have had" at the time of the signing of the release, which includes the claims in her complaint. (See *Jefferson v. California Dept. of Youth Authority* (2002) 28 Cal.4th 299, 307 [language waiving rights under section 1542 in release "establishes unambiguously the parties' intent that the release cover possible civil claims"].)[7]

Moreover, defendants met their initial burden of showing the release extended to Raymond Go as a third-party beneficiary based on Hendrickson's declaration, Barclay's deposition, and the email from Barclay requesting a carve out for claims against Raymond Go. And, contrary to Wang's contention, the trial court properly considered this extrinsic evidence in construing the release as it was relevant to prove a meaning to which the language of the release was reasonably susceptible, i.e., that it extended to Raymond Go. (See *Garcia, supra*, 36 Cal.3d at p. 435.) The unlawful detainer action stated Wang took possession of the premises from "Plaintiff's agent," referencing Raymond Go, and Wang alleged in her answer to that action that Raymond Go had assaulted her. Hence, both parties implicated Raymond Go's conduct in the action, making it reasonable that he fell within "the other side."

---

[7] As we conclude the release covered the claims in Wang's complaint based on the language described above, we do not reach defendants' assertion that the claims are barred because they "arose out of or were related to [Wang's] tenancy of the property."

Even more telling as to the parties' understanding of the scope of the release was the evidence surrounding the proposed carve out. As Barclay and Hendrickson both explained, and the email between them showed, Wang specifically and unsuccessfully sought to include "a carve out to the waiver of claims . . . for Ms. Wang to pursue . . . any claim she may have against Raymond Go." The most logical inference from Wang's seeking to add a clause stating that she " 'shall retain any and all claims or causes of action that [she] may have against Raymond Go' " is that she understood the release, as drafted, did not allow her to bring such claims against him. When Hendrickson countered Wang's proposal with a carve out for claims by Anthony Go against Wang, she refused the counteroffer—evidence that Wang gave up on her effort to seek a carve out for Raymond Go to avoid any liability on her part for property damage. Ultimately, Wang agreed to sign the Stipulation even though it did not contain a carve out for Raymond Go.

Based on this evidence, we conclude defendants met their burden to "affirmatively show that the parties intended to release" Raymond Go. (See *Neverkovec*, *supra*, 74 Cal.App.4th at p. 349.)

### C. Wang Failed to Raise an Issue of Triable Fact that the Parties Did Not Intend to Release Raymond Go

When a defendant seeking summary judgment has made a sufficient showing that an action is meritless due to a complete defense, "the burden shifts to the plaintiff to present specific facts showing a triable issue of material fact." (*Neverkovec*, *supra*, 74 Cal.App.4th at p. 344.) "There is a triable issue of material fact if, and only if, the evidence would allow a reasonable trier of fact to find the underlying fact in favor of the party opposing the motion in accordance with the applicable standard of proof." (*Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 850, fn. omitted.)

12

Wang contends she raised an issue of triable fact as to whether she intended to release Raymond Go from future claims as a third-party beneficiary to the Stipulation. In support, she points to the fact that she and Barclay crossed out the word "tenants" from the list of those bound by the release prior to the parties' signing the Stipulation. We are not convinced.

As an initial matter, it does not follow that merely because Wang crossed out "tenants" from those *bound* by the release, the parties thereby removed any tenants (like Raymond Go) from falling within the ambit of the release itself. As discussed above, the release language itself extended to "the other side," which—as Wang apparently understood given her effort to seek the carve out—extended to Raymond Go.

Moreover, the record shows that, regardless of Wang's wishes, she was made aware by counsel that crossing out "tenants" from that list would not allow her to sue Raymond Go. Barclay expressly explained to Wang that, although they "took out the term 'tenants,' because the person she was concerned about was Raymond Go and that he was a tenant, . . . that did not represent that [Wang] would be able to sue in the future."

Wang's reliance on *In re Marriage of Lund* (2009) 174 Cal.App.4th 40 is unavailing. There, the appellate court concluded the parties had executed an agreement while married that "unambiguously" transmuted the separate property of the husband into community property. (*Id.* at p. 51.) In so finding, the court noted that two provisions of the agreement made clear that all property previously held as the husband's separate property was to be considered community property as of the execution of the agreement. (*Id.* at pp. 51–52.) The court also pointed to the parties' elimination of a distinct section of the agreement, which identified the husband's real property as his separate property, as confirmation of their intent to transmute all his

13

separate property.  (*Id.* at p. 52.)  By removing that section, the court concluded, "the parties manifested their intent to eliminate any potential argument that the real properties identified in [that section] were not subject to the transmutation provided for" in the agreement.  (*Ibid.*)

By contrast, the terms of the Stipulation here do not "unambiguously" show the parties intended to preclude Raymond Go as a third-party beneficiary to the release.  (Cf. *In re Marriage of Lund*, *supra*, 174 Cal.App.4th at p. 51.)  Hence, the removal of the word "tenants" from the list of those bound by the release—which, as noted above, had no bearing on who was encompassed by the release—did not manifest an intent by the parties to eliminate any argument that Raymond Go was a third-party beneficiary.  (Cf. *id.* at p. 52.)

Accordingly, Wang's declaration as to her intention in crossing out "tenants" was not sufficient to set forth specific facts to allow a reasonable trier of fact to find the release did not extend to Raymond Go as a third-party beneficiary.  (See *Aguilar v. Atlantic Richfield Co.*, *supra*, 25 Cal.4th at p. 850.)

### D.  Wang Failed to Raise an Issue of Triable Fact as to Her Understanding of the Stipulation

Wang contends she raised an issue of triable fact as to her understanding of the Stipulation based on her English literacy, combined with her mental health issues.  We disagree.

Wang relies on *Little v. Sanchez* (1985) 166 Cal.App.3d 501 in support of this assertion.  In that case, the tenants, who did not speak English, were presented with documents in English by their landlord entitling him to immediate possession of their homes, and it was uncontested that the tenants

14

signed without understanding the nature and effect of the documents. (*Id.* at p. 504.)

The record here contains no evidence that Wang did not understand the Stipulation. (See *Needelman v. DeWolf Realty Co., Inc.* (2015) 239 Cal.App.4th 750, 765.) When Wang met with Barclay to discuss the Stipulation in January 2020, she had already completed a master's degree in industrial design, having taken years of courses in English. She had also passed an English course as part of that program in 2017. Moreover, her own attorney stated that Wang never indicated during their discussions that she could not understand the language of the Stipulation, nor did she ask for any portion to be translated to Mandarin. And while Wang's medical documents showed she had some mental health symptoms in February and July 2019, she did not present any evidence that those symptoms prevented her from understanding the terms of the Stipulation. Wang did not present an issue of triable fact on this basis.

In sum, defendants met their initial burden of proffering prima facie evidence that the release in the Stipulation barred this lawsuit and Wang failed to meet her burden of proffering evidence raising triable issues of fact that would preclude summary judgment in favor of defendants. Accordingly, we shall affirm.

## DISPOSITION

The judgment is affirmed. Defendants and respondents are awarded costs on appeal. (Cal. Rules of Court, rule 8.278(a)(1), (2).)

_____

Petrou, J.

WE CONCUR:

_____

Fujisaki, Acting P. J.

_____

Rodríguez, J.

A167231/*Wang v. Go et al.*

16